UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA

        -against-

JOHN MIGNANO, et al.,

                Defendants.
------------------------------X

10 Cr. 667 (BMC)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOHN MIGNANO'S MOTION FOR SEVERANCE OF TRIAL

Frank Handelman, Esq.
Attorney for Defendant
JOHN MIGNANO
780 Third Avenue, 4th Floor
New York, New York 10017
(212) 471-6239

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA

-against-                                             10 Cr. 10-667 (BMC)

JOHN MIGNANO, et al.,

                    Defendants.
------------------------------X

## MEMORANDUM OF LAW

Defendant John Mignano moves, pursuant to Rule 14 of the Federal Rules of Criminal Procedure for an Order severing Mr. Mignano from the trial of the other defendants. In the alternative, to the extent necessary, Mr. Mignano requests that this Court defer judgment on the within motion until the conclusion of the Government's case-in-chief at trial.

## FACTUAL BACKGROUND

On or about July 27, 2009, Mignano, along with co-defendant Maria Maresca, co-defendant Tina Rintrona and Irma Martinez-Donato were traveling from Arizona to New York in a vehicle driven by Mignano and owned by Rintrona. The vehicle was stopped by a Kansas state trooper who claimed that the vehicle was speeding at 78 mph in a 70 mph speed limit zone. The state trooper checked Mignano's license and the vehicle registration and then issued a warning. The state trooper began to walk away from the vehicle, but then walked back and stated he wanted to ask a few questions. After a few minutes the state trooper asked if he could take a quick look and asked everyone to step out of the vehicle. The state trooper claimed to

have observed co-defendant Maresca stuff an item into her blouse. He then handcuffed Maresca and determined that she had a small amount of marijuana. The trooper ordered everyone to step away from the vehicle, and then commenced to search the vehicle along with another officer. Drugs were found in the rear passenger area of the vehicle and Mignano, Maresca, Rintrona and Martinez-Donanto were all taken into custody, transported to a police station and interrogated. Mignano is charged with two counts of conspiring to distribute a controlled substance. Rintrona (his wife) and Maresca (his mother-in-law) are co-defendants. Irma Martinez-Donato is not a named defendant.

## ARGUMENT

### MIGNANO'S TRIAL SHOULD BE SEVERED DUE TO THE PREJUDICE HE WOULD SUFFER AT A JOINT TRIAL

Rule 14 of the Federal Rules of Criminal Procedure provides the Court with authority to grant a severance where it appears that a defendant's rights will be prejudiced at a joint trial. It is well settled that sufficient grounds for a severance under Rule 14 exist where defendants have been joined under Rule 8(b), and there is a serious risk that a joint trial "would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." Id. Thus, the preference of a joint trial must give way to the rights of a defendant if a single trial would prejudice him and deny him a fair trial.

Defendant Mignano requests a severance of trial due to the fact that he would be

unduly prejudiced by the inevitable and unavoidable spillover of evidence inadmissible to this defendant, potentially antagonistic defenses that will arise between co-defendants, the taint of prejudice of guilt by association and violation of his Sixth Amendment rights. The risk of prejudicing these rights so greatly outweighs the preference for judicial economy in this case, that a severance is warranted.

Prejudicial spillover has been regarded as occurring "when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper." United States v. Williams, 181 F.Supp.2d 267, 301-302 (2001) (finding that "significant risk that powerful evidence that would not be admissible against Ms. Rolon will be introduced in a joint trial against her co-defendants, and, consequently, a real risk of spillover prejudice"). In United States v. Kelly, 349 F2d 720, 756 (1965) the Court reversed the lower court as to one defendant as it found that the evidence against defendant Shuck of knowledge of and participation in the charged conspiracy was "tenuous and unsubstantial," and based on Rule 14, the trial should have been severed to protect his rights. The Court stated that it was apparent "he was likely to be prejudiced by the accumulation of evidence of wrongdoing by his co-defendants." The court also noted at "no amount of cautionary instructions could have undone the harm" of having tried Shuck with the other two defendants. Id. at 758. In Blumenthal v. United States, 332 U.S. 539, 559 (1947), the Court found for the government. Nevertheless, the danger in relying on limiting instructions was clearly established in Blumenthal, and is a strong guidepost to this day. The Court stated: "The grave danger in this case, if any, arose not from the trial court's rulings upon admissibility or from its instructions to the jury. As we have said, these were as adequate as might reasonably be required in a joint trial. The danger rested rather in the risk that the jury, in disregard of the court's direction, would

transfer, consciously or unconsciously, the effect of the excluded admission from the case as made against Goldsmith and Weiss across the barrier of exclusion to the other three defendants. That danger was real. It is one likely to arise in any conspiracy trial . . . Perhaps even at best the safeguards provided by clear rulings on admissibility, limitations of the bearing of evidence as against particular individuals, and adequate instructions, are insufficient to ward off the danger entirely." The Second Circuit has also held that the presumption that jurors will adhere to limiting instructions "fades when there is an overwhelming probability that the jury will be called upon to perform humanly impossible feats of mental dexterity." United States v. McDermott, 245 F.3d 133, 139-40 (2d. Cir. 2001) (finding that due to overwhelming prejudicial spillover, the jury could not be presumed to be effective).

Limiting instructions cannot fully avoid the resulting prejudice of a joint trial in this case. The evidence only places Mignano behind the wheel of his wife's vehicle in which drugs were recovered. There is no indication that Mignano had been in the rear passenger area of the vehicle. Nor is there any evidence of his knowledge or participation in the conspiracy alleged in the indictment. Mignano indicated to Kansas police that he visited with family, attended a barbeque, slept for a while and then got up and began driving. There appears to be no physical evidence, either surveillance or recordings or photographic proof that Mignano was present when the luggage was packed into the vehicle. Furthermore, there is simply no way to avoid the sting of the evidence admissible against his wife and mother-in-law from impacting the jury. The degree of prejudice Mignano would suffer at a single trial in this case justifies a severance of trial as failure to sever would clearly result in prejudicial spillover as any jury would likely impute guilt to Mignano based on his family relations and interactions with his wife and mother-in-law. The difficulty in distinguishing Mignano from the co-defendants would only

be exacerbated by their family relationship. Even with limiting instruction, the jury may well have difficulty overlooking the fact that Mignano is charged with his wife and mother-in-law and in not extending any conclusion of guilt they might reach for those defendants to Mignano. Nor would the compartmentalization of evidence avoid the clear prejudice that Mignano would suffer. Again, there is no evidence of his knowledge or participation as to the drugs in the vehicle beyond his presence in the vehicle. As there is no direct evidence against Mignano as to the drugs, joinder of the defendants is prejudicial and that prejudice would continue throughout the trial, as any such evidence would be inadmissible against him. To ensure a fair trial, that he is not prejudiced and does not suffer the unavoidable guilt by association that would occur in a joint trial of this matter, a severance is the only safeguard of Mr. Mignano's rights in this regard.

### MIGNANO JOINS IN CO-DEFENDANTS' MOTIONS TO SUPPRESS

Defendant Mignano also joins in co-defendants' motions to suppress. Upon a close review of the police dash-cam video recording of the July 27, 2009 stop of the vehicle, there is no audible indication that Mignano gave the trooper permission to search the vehicle. Based on the law and legal arguments submitted by co-defendants Maresca and Rintrona, Mignano joins in the application to suppress the evidence as fruit of an illegal search.

## CONCLUSION

Based on the foregoing facts and law, Mignano's motion should be granted ordering a severance of trial and a suppression of the evidence recovered as a result of an illegal search.

Dated: New York, New York
       March 10, 2011

                                                Respectfully submitted,

                                                Frank Handelman, Esq.